UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

REYES DIAZ, individually and on behalf of
others similarly situated,

        Plaintiffs,

  -v-                                              No. 17 CV 1311-LTS-KNF

SLAYTON ONE CLEANER INC. d/b/a
SLAYTON CLEANERS, KSLC CLEANERS
INC. d/b/a/ SLAYTON CLEANERS, LI
CHING CHANG, MYONG H. LEE, and
SHIH L. LIAO,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

In this action brought against defendants Slayton One Cleaner Inc. ("Slayton One"), KSLC Cleaners Inc. ("KSLC"), Li Ching Chang ("Chang"), Shih L. Liao ("Liao") , and Myong H. Lee ("Lee"), Reyes Diaz ("Plaintiff") asserts claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et seq.</u>, and the New York State Labor Law ("NYLL"), NYLL §§ 190, 650 <u>et seq.</u>, that allegedly occurred from February 2011 through February 2017. During a substantial portion of that period, Diaz was employed by a dry cleaning business owned by Defendant KSLC, which was in turn owned by Defendant Lee (KSLC and Lee are hereafter referred to as the "Seller Defendants"). The business was thereafter sold to Defendant Slayton One, which is owned by Defendants Chang and Liao. Slayton One and Chang (collectively, the "Buyer Defendants")[1] move for summary judgment dismissing

---

[1]    After the instant motion was filed, Plaintiff further amended the Complaint to name Defendant Liao, who is also a principal of Slayton One. Liao did not join the summary

Plaintiff's claims against them that relate to the period prior to Slayton One's purchase of the dry cleaning business, arguing that they are not liable for the Seller Defendants' alleged wage and hour law violations. (Docket Entry No. 56.)

The Court has subject matter jurisdiction of Plaintiff's FLSA claims pursuant to 28 U.S.C. section 1331 and 29 U.S.C. section 216(b) and supplemental jurisdiction of his NYLL claims pursuant to 28 U.S.C. section 1367(a).

The Court has considered the submissions of both parties carefully and, for the following reasons, grants the Buyer Defendants' motion for partial summary judgment, dismissing this action as against them to the extent Plaintiff's claims arise from services performed prior to Slayton One's purchase of the dry cleaning business.

## BACKGROUND[2]

Lee was the sole owner of KSLC, a New York corporation formed in 2007, which operated as a dry cleaning business in Manhattan that did business as Slayton Cleaners. (Def. 56.1 St. ¶¶ 1-2.) KSLC retained seven employees, "including one front-desk [attendant], one helper, two ironing persons, one spotter, one driver[,] and one tailor." (Id. ¶ 17.) According to his complaint, Diaz worked at KSLC, and later Slayton One, as an ironer from 2004 to about February 5, 2017. (Second Am. Compl., Docket Entry No. 68, ¶¶ 6, 16.)

---

judgment motion and, as noted in the "Conclusion" section of the Memorandum Order, the Court will issue an order to show cause regarding the scope of the claims against Liao.

[2] The facts recited herein are undisputed unless otherwise indicated. Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

Chang and her husband, Liao, jointly formed Slayton One in February 2016. (Def. 56.1 St. ¶ 3.) Liao and Lee began discussing the purchase of KSLC's dry cleaning business in the beginning of 2016. (Id. ¶ 5.) According to Liao's declaration, Lee assured him during the negotiations to purchase KSLC's dry cleaning business that KSLC had complied with all applicable laws and "was free from any legal liability or debt." (Liao Decl., Docket Entry No. 59, ¶ 7.) Chang states that she did not review any documents or conduct any due diligence research in preparation for the sale. (Chang Tr., Docket Entry No. 61-2, 18:5-19:14.) During their negotiations, Liao's investigation into the business appears to have consisted only of asking Lee about how much gross income it generated. (Slayton One Rule 30(b)(6) Tr., by Liao, Docket Entry No. 58-1, at 15:10-16:16.)

KSLC sold assets consisting of its "goodwill, leasehold interest, all equipment, supplies, trade name, fixtures, furnishings and improvements" to Slayton One on April 5, 2016, for a purchase price of $350,000. (Bill of Sale, Docket Entry No. 58-3, ¶¶ 1-2.) In the Bill of Sale, Lee warranted that there were "no pending lawsuits or judgments against [KSLC] or other legal obligations which may be enforced against" the transferred assets. (Bill of Sale at pg. 3.) $100,000 was paid upon closing and the remaining $250,000 was financed by a promissory note signed by Chang, both individually and as a representative of Slayton One. (Def. 56.1 St. ¶ 9; Promissory Note, dated Apr. 5, 2016, Docket Entry No. 58-4.) Pursuant to this note, Slayton One was required to remit monthly payments of $8,660.15 to KSLC or KSLC's designee. (Promissory Note at pg. 1, ¶ 1.) KSLC then assigned the lease of its premises to Slayton with the landlord's consent. (Def. 56.1 St. ¶ 7.)

Slayton One, doing business as Slayton Cleaners, continued to provide dry cleaning and laundry services in the same manner as KSLC, using the same location and, for the

most part, the same equipment.  (Pl. 56.1 St. Counterstatement of Material Facts ¶¶ 4-6; Lee Tr., Docket Entry No. 61-1, at 14:3-8 (noting minor changes in equipment following the sale).) Initially, all KSLC employees were retained by Slayton One except for the driver, whose duties were absorbed by the driver for Mekong Cleaners, another cleaning business owned by Chang and Liao.  (Slayton One Tr. at 21:4-16; Liao Decl. ¶ 18.)  Liao notes that he paid the employees at the same rate as KSLC had for the first week after the sale, but then increased their wages the next week.  (Def. 56.1 St. ¶ 19; Slayton One Tr. at 31:2-9.)  The front desk attendant resigned approximately one month after the sale, and the tailor left approximately one month later following an argument with the new front desk attendant.  (Liao Decl. ¶ 18; Slayton One Tr. at 22:25-24:18.)

This action was commenced on February 21, 2017. (Compl., Docket Entry No. 1.)

Slayton One has been making its monthly payments of the installment portion of the sale price in a timely manner although, according to the three proffered check images, they are being paid directly to Lee rather than to KSLC.  (Def. 56.1 St. ¶ 11; Docket Entry No. 58-5.) As of about January 18, 2018, Slayton One owed $77,941.25 to KSLC under the terms of the promissory note.  (Liao Decl. ¶ 12.)

When asked at her November 6, 2017, deposition whether she was still a business owner, Lee responded "no."  (Lee Tr., 10:11-12.)    The transcript of Lee's deposition also includes the following testimony:

> Q. Do you know if right after the sale, in April of 2016, Slayton One Cleaner, Inc. continued to keep the same employees that worked while you owned the Slayton?
> A. I understand that they use the same.
> Q. Did you discuss with Lee Ching [sic] who the employe[e]s were and what their schedules were and how much they were being paid?
> A. Yes.

(Id. at 14:9-17.) Liao testified that he asked Lee about KSLC's employees' pay and hours after they closed the sale. (Slayton One Tr. at 25:4-27:10; 31:2-19.)

### DISCUSSION

The pending motion is brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a material issue of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986), and the court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F. 2d 1455, 1461 (2d Cir. 1993)) (internal quotation marks omitted). A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

In his Second Amended Complaint, Plaintiff asserts claims against all Defendants for, inter alia, failure to pay overtime compensation during his employment with Slayton Cleaners. The Buyer Defendants, denying that they had knowledge of any wage and hour law violations that occurred prior to Slayton One's acquisition of the business, seek dismissal of claims against them, as the Seller Defendants' successors, that arise from Plaintiff's employment

prior to the acquisition.  In his opposition brief to the instant motion, Plaintiff "concedes that successor liability does not apply to his claims under the NYLL, and that successor liability does not apply to Defendant Li Chi Chang." (Opp'n Mem. at 1 n.1.)  The discussion below therefore focuses on the viability of Plaintiff's FLSA successor liability claim against Slayton One.

Legal Standards for FLSA Successor Liability

Federal courts sitting in New York employ either a New York common law standard or a "substantial continuity" test in determining whether a defendant may be held liable for a previous employer's labor law violation.  Xue Ming Wang v. Abumi Sushi, Inc., 262 F. Supp. 3d 81, 87-89 (S.D.N.Y. 2017).  Under the common law test, a business buyer is liable for the seller's debts only when "(1) a buyer . . . formally assumes a seller's debts; (2) [the] transactions [are] undertaken to defraud creditors; (3) a buyer . . . de facto merged with a seller; [or] (4) a buyer . . . is a mere continuation of a seller."  Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003) (analyzing a successor's liability for its predecessor's debt).

Neither party argues that the common law successor liability standard is satisfied here, and the record does not appear to provide any factual basis for a finding of liability under that standard in this case.  There was no express assumption of any of Seller Defendants' liabilities, there is no suggestion of fraud, and there is no overlap of ownership between the Seller and Buyer Defendants.  See Abumi Sushi, 262 F. Supp. 3d at 87-88 (discussing the factors to determine successorship based on de facto merger or status as a mere continuation of the seller, and explaining that continuity of ownership is indispensable to successor liability under either the third or fourth prong (citing Priestley v. Headminder, Inc., 647 F.3d 497, 505-506 (2d Cir. 2011))).

Courts within this circuit typically examine the following nine factors in applying the more liberal "substantial continuity" test:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether [it] uses the same or substantially the same work force; (6) whether [it] uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [it] uses the same machinery, equipment, and methods of production; and (9) whether [it] produces the same product.

Bautista v. Beyond Thai Kitchen, Inc., No. 14 CV 4335 LGS, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015) (quoting Musikiwamba v. ESSI, Inc., 760 F.2d 740, 750 (7th Cir. 1985)). The burden of demonstrating substantial continuity lies with Plaintiff. Abumi Sushi, 262 F. Supp. 3d at 92.[3]

The parties acknowledge that the Buyer Defendants had no actual notice of this suit because it was filed after the sale of Slayton Cleaners was consummated, but Plaintiff contends that Slayton One had actual notice of the underlying violations and further argues that Slayton One had constructive notice, contending that the Buyer Defendants had a duty of due diligence to investigate the labor conditions. See Battino v. Cornelia Fifth Ave., LLC, 861 F.

---

[3] There is some disagreement as to whether the substantial continuity test for successor liability remains viable in this Circuit following the Second Circuit's rejection of the test in the context of CERCLA, 42 U.S.C. § 9601 et seq., in New York v. Nat'l Servs. Indus., 352 F.3d 682 (2d Cir. 2003). But most district courts within this Circuit that have addressed the issue since National Services continue to view the test as available to determine liability under FLSA. See Hidalgo v. New Ichiro Sushi, Inc., No. 15 CV 414 (AJN), 2017 WL 4712789, at *11 (S.D.N.Y. Sept. 27, 2017) (finding "overwhelming and persuasive authority that the substantial continuity test applies to FLSA claims"); see also Abumi Sushi, 262 F. Supp. at 88-89 (discussing the weight of authority for the continued use of the substantial continuity test in the FLSA context). Both parties argue the applicability of the standard here.

Supp. 2d 392, 405-407 (S.D.N.Y. 2012) (finding that notice may be satisfied by knowledge of wage violations); (see Compl., Docket Entry No. 1, filed on February 21, 2017).  Plaintiff's actual notice argument is based entirely upon Lee's deposition testimony quoted above, that she discussed the identities, schedules, and pay rates of the Slayton employees with "Ching [sic]." That testimony followed a question focused on the immediate post-sale period, however, and therefore does not bear reasonable interpretation as an assertion of pre-transaction disclosure. Furthermore, Liao testified that he only asked about the employees' wages and schedules after the sale had closed.  Plaintiff's bald assertion that Lee discussed his employees' schedule and pay with the Buyer Defendants prior to the sale is insufficient to create a genuine issue of material fact.  See Zapata v. Riverside Study Ctr., Inc., No. 10 CV 6283 (CM), 2012 WL 1744792, at *12 (S.D.N.Y. May 16, 2012) (finding that non-moving plaintiff's assertion that employees of a defendant company could have supervised a premises, where there was testimony that the defendant company did not supervise the work on that project, amounted to merely colorable speculation and was thus insufficient to avoid summary judgment).

Turning to the question of constructive notice, the record reflects, as noted above, that Lee assured the Buyer Defendants prior to the sale that the business was in compliance with all laws and was debt-free.  The evidentiary proffers indicate that Chang and Liao asked only about the business's income, and the asset purchase agreement includes Lee's warranty that there were no unsatisfied pending lawsuits, judgments, or legal obligations associated with the business.  Plaintiff, citing Bautista v. Beyond Thai Kitchen, Inc., No. 14 CV 4335 (LGS), 2015 WL 5459737, at *7-8 (S.D.N.Y. Sept. 17, 2015), nevertheless argues that that the Buyer Defendants should be held to have had constructive knowledge of the Seller Defendants' alleged FLSA violation.  In Bautista, the district court, citing out-of-circuit precedent, stated that

successor liability may be predicated on constructive knowledge where buyers fail to exercise due diligence and that such a principle was favored for policy reasons so as to encourage "shoppers for substantial assets . . . to get the whole story and adjust their offers accordingly." Id. at *7-8 (internal quotation marks and citation omitted). The court concluded that the defendant restaurant, which had made no inquiries about potential liabilities and paid a suspiciously low price in a rushed sale of the business, was liable for the outstanding FLSA obligations of the predecessor owner. No such extreme factual predicates are present here, however. The Court finds more persuasive the legal and policy analysis of the Abumi Sushi decision, which held that there is no general duty of due diligence required of the purchaser of a business, and that imputing such constructive notice is appropriate only when certain "red flags," such as the "suspiciously low purchase price and uncharacteristically quick closing" that were present in Bautista, "should have led the defendant to inquire further into the circumstances of the transaction." Abumi Sushi, 262 F. Supp. 3d at 93. The Abumi Sushi court reasoned that to impose a general duty of due diligence in the absence of facts suggestive of a predecessor's culpable conduct would render the notice prong of the substantial continuity inquiry practically meaningless, imputing such notice to almost all innocent purchasers. Id. at 94. Here, Plaintiff points to no attributes of the sale that would have reasonably alerted the Buyer Defendants that an investigation of KSLC's labor practices was warranted. In fact, the Buyer Defendants received assurances that KSLC had complied with applicable laws and had no unsatisfied claims pending against it. Accordingly, the Court finds that this factor weighs in favor of Slayton One.

Turning to the second factor, Plaintiff asserts that it is unlikely that KSLC could provide relief because it has stopped operating. Lee's negative answer to the question of whether she is currently a business owner is insufficient to support a reasonable jury's conclusion that

KSLC has ceased operation and is without assets.  In light of the undisputed facts that KSLC still had a right to the balance of the purchase price as of the filing of this action and that the monthly payments had been made regularly, Plaintiff, who has the burden of demonstrating that recovery from the predecessor is unlikely, has not even raised a triable issue of fact as to whether KSLC is unlikely to be able to provide adequate relief.  See Abumi Sushi, 262 F. Supp. 3d at 95-96 (finding that a plaintiff failed to demonstrate that the predecessor defendant was unlikely to satisfy judgment based only on a proffer that the predecessor corporation had dissolved, where the predecessor defendant had sold its assets in exchange for money).

The fact that the monthly payment checks were made out to Lee (KLCS's principal), rather than to KSLC, is also insufficient to raise a genuine issue of material fact with respect to KSLC's ability satisfy a judgment.  The promissory note provided that Slayton One could make payments to KSLC or KSLC's designee.  KSLC had the right to receive the payments and Plaintiff has provided no evidence that the money is unavailable to pay KSLC's obligations.  Plaintiff has thus failed to frame a genuine issue of material fact with respect to whether KSLC is unable provide relief to Plaintiff, and the second factor thus weighs against successor liability.

Because Slayton One's principals took over the day-to-day management of the business following the sale, the Court also concludes, and Plaintiff concedes, that there was a complete turnover in the business' supervisory personnel, weighing against successor liability with respect to the sixth factor.

The remaining six factors weigh in Plaintiff's favor.  Although the parties dispute whether there has been a substantial change in employees owing to the termination of the driver and the resignations of the front desk attendant and tailor shortly after Slayton One's purchase,

the Court resolves the fifth factor in favor of Plaintiff, as the non-moving party, for the purposes of this motion practice.  Similarly, Plaintiff has proffered evidence that the structure of the workforce remained substantially the same despite the consolidation of the driver duties for Mekong Cleaners and Slayton One into a single position, thus meeting the seventh factor.  Slayton One concedes that it uses substantially the same premises (plant) and equipment and provides the same services, addressing the fourth, eighth, and ninth factors.  Although the Buyer Defendants assert that Slayton One consolidated its ironing operations at Mekong, this change does not appear from the record to have represented a significant shift in Slayton One's business operations.  Accordingly the third factor also weighs in Plaintiff's favor.

After evaluating each factor individually, the Court now proceeds to balance them.  Courts within this district have disagreed as to the relative weight of each factor.  For example, the Abumi Sushi court held that the first and second factors are indispensable, whereas the Patino court stated that "no one factor is dispositive" and found successor liability where a majority of the factors weighed in favor of liability even though the plaintiff had failed to establish that the defendant in that case had prior notice of the liability.  Compare Patino v. Brady Parking, Inc., No. 11 CV 3080 (DF), 2017 WL 5198192, at *11 (S.D.N.Y. Oct. 31, 2017) with Abumi Sushi, 262 F. Supp. 3d at 89.  The Abumi Sushi court relied on decisions from several circuit courts of appeal in reasoning that the imposition of successor liability must balance two competing goals:  "on the one hand preventing wrongdoers from escaping liability and on the other hand facilitating the transfer of corporate assets to their most valuable uses."  Abumi Sushi, 262 F. Supp. 3d at 90 (quoting E.E.O.C. v. Vucitech, 842 F.2d 936, 945 (7th Cir. 1988)) (internal quotation marks omitted).  The Abumi Sushi court concluded that holding a successor liable for the labor violations committed by its predecessor when it had no notice of

the violations and the predecessor is capable of repairing the harm caused by its past labor practices would be unjust, unnecessary, and needlessly constrict business owners' rights to alienate their assets.  Id. at 91.  This Court concurs in the Abumi Sushi court's reasoning and thus recognizes the first two factors as more significant than the others.  Cf. Hidalgo v. New Ichiro Sushi, Inc., No. 15 CV 414 (AJN), 2017 WL 4712789, at *11, 14 (S.D.N.Y. Sept. 27, 2017) (also recognizing the elevated importance of the first two factors).

Having evaluated the factual record, drawing all reasonable inferences in Plaintiff's favor and giving greater weight to the first and second factors for the reasons explained above, the Court concludes that Slayton one is entitled as a matter of law to summary judgment dismissing the successor liability claims against it.  Plaintiff has failed to proffer evidence from which a rational factfinder could conclude that Slayton One had prior notice of the Seller Defendants' alleged liability or that KSLC is unlikely to able to satisfy it.  These factors, which are the most significant, weigh decidedly in favor of Slayton One.  See Abumi Sushi, 262 F. Supp. 3d at 89-91.  Furthermore, there has been a complete turnover in management, which militates against imputing the Seller Defendants' alleged culpability to Slayton One.  Cf. Patino, 2017 WL 5198192, at *10-11 (finding successor liability when there was no notice and the majority of other factors favored the plaintiff, but where the same person managed operations for both the successor and predecessor entities).  The remaining factors simply indicate that the Buyer Defendants continue to operate the ongoing business that they purchased, providing the same service in the same location with the same equipment.  "Such continuity, standing alone, should not necessarily lead to the imposition of successor liability," as such a finding on these factors would over-expansively impute culpability to all innocent purchasers of an ongoing business without regard to the purchaser's notice and the seller's ability

to provide relief.  Cf. De Ping Song v. 47 Old Country, Inc., 975 F. Supp. 2d 288, 297 (E.D.N.Y. 2013), vacated for lack of subject matter jurisdiction sub nom. De Ping Song v. Inhae Corp., 578 F. App'x 22 (2d Cir. 2014) (finding successor liability because of the continuity of business operations in addition to the successor's notice and the predecessor's inability provide relief); see also Abumi Sushi, 262 F. Supp. 3d at 89-91.  No rational factfinder could conclude that the relevant substantial continuity factors, properly evaluated, weigh in Plaintiff's favor.

The Court, therefore, finds that Slayton One is entitled as a matter of law to partial summary judgment dismissing the claims against it that relate to the period prior to Slayton One's April 5, 2016 purchase of the dry cleaning business.

CONCLUSION

For the foregoing reasons, Slayton One and Chang's motion for partial summary judgment is granted.  Plaintiff's claims are dismissed against them to the extent such claims relate to the period prior to Slayton One's April 5, 2016 purchase of the dry cleaning business from KSLC.  The Court will issue a separate order directing Plaintiff to show cause as to why the same claims should not be similarly dismissed as against Defendant Liao.

This Memorandum Opinion and Order resolves Docket Entry No. 56.  The case remains referred to Magistrate Judge Fox for general pretrial management.

SO ORDERED.


Dated: New York, New York
      October 11, 2018

      /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      United States District Judge